IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| WFG NATIONAL TITLE COMPANY OF<br>OF WASHINGTON, LLC<br>10900 NE 8th Street, Suite 1100<br>Bellevue WA  98004<br><br>and<br><br>WFG NATIONAL TITLE INSURANCE COMPANY<br>12909 SW 68th Parkway, Suite 350<br>Portland OR  97223<br><br> Plaintiffs,<br><br>v.<br><br>MCCARTHY LEBIT CRYSTAL & LIFFMAN CO., LPA<br>1111 Superior Ave Suite 2700<br>Cleveland, OH 44114<br><br> Defendant | Civil Action No. |

## COMPLAINT

### The Parties

1. Plaintiff, WFG National Title Company of Washington, LLC ("WFG Escrow"), is a limited liability company formed in the State of Washington with its principal place of business at 10900 NE 8th Street, Suite 1100, Bellevue WA  98004.

2. WFG Escrow provides closing and escrow services in connection with real estate transactions and refinances.

3. Plaintiff, WFG National Title Insurance Company ("WFG Title"), is an corporation incorporated in the State of South Carolina with its principal place of business at 12909 SW 68th Parkway, Suite 350, Portland OR 97223.

4. WFG Title is a national title insurance underwriter providing, inter alia, title insurance policies to buyers and/or lenders insuring title to real estate, subject to the terms and conditions of the policies.

5. Defendant, McCarthy Lebit Crystal & Liffman Co., LLP ("Defendant"), is a limited liability partnership formed in the State of Ohio and maintaining its principal place of business at 1111 Superior Ave Suite 2700, Cleveland, OH 44114.

6. Defendant is a law firm operating in the State of Ohio.

### Jurisdiction and Venue

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant by virtue of its transacting, doing, and soliciting business in this district.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant is located and conducts business in this district and because a substantial part of the event or omissions giving rise to Plaintiffs' claim occurred in this district.

### Background

10. This matter involves a third party's fraudulent diversion of proceeds from a refinance loan transaction occurring in Seattle Washington to an account of the Defendant, and Defendant's failure to safeguard those funds to the detriment of Plaintiffs.

11. The subject transaction involved the real property located at 304 25th Avenue South, Seattle Washington (the "Property").

12. The Property is owned by 304 25th Avenue S LLC ("Owner").

13. At all times material hereto, the Property was subject to a mortgage given by Owner to First Republic Bank ("First Republic") in the sum of $556,400 (the "First Republic Mortgage").

14. Owner made application to Fay Servicing, LLC ("Fay") for a refinance loan in the sum of $737,750 (the "Refinance Loan"), which loan was to be used, in part, to pay off the First Republic Mortgage.

15. A condition of the Refinance Loan was that Fay would be provided a new mortgage in first lien position on the Property.

16. As part of the Refinance Loan, the First Republic Mortgage was to be satisfied.

17. The loan was approved and settlement on the Refinance Loan was scheduled.

### The Wire Instructions for the payoff of the First Mortgage

18. In connection with the original scheduled closing on the Refinance Loan, a representative of the Owner forwarded a payoff statement to WFG Escrow in connection with the First Republic Mortgage (the "Original Payoff Statement"). A true and correct copy of the Original Payoff Statement is attached hereto as Exhibit "A".

19. As a result of a delay in the closing on the Refinance Loan, it was necessary to obtain an updated payoff for the First Republic Mortgage.

20. A representative of the Owner then forwarded a new payoff statement to WFG Escrow in connection with the First Republic Mortgage (the "Second Payoff

Statement"). A true and correct copy of the Second Payoff Statement is attached hereto as Exhibit "B".

21. Unknown to Plaintiffs, the Owner's e-mail account had been compromised and the Second Payoff Statement was not provided to the Owner by First Republic, but was instead provided by an unknown third party who intended to divert the proceeds from the Refinance Loan closing to that unknown third party.

22. The Second Payoff Statement directed that the funds to pay off and satisfy the First Republic Mortgage should be wired (the "Fraudulent Wire Instructions") to an account held by Defendant at The Huntington National Bank ("Huntington").

### The Refinance Closing

23. The Refinance Loan closing occurred on or about June 15, 2021.

24. In connection with the closing, Fay wired the sum of $723,357.84 to WFG Escrow, representing the net proceeds from the Refinance Loan.

25. At the closing, to secure repayment of the Refinance Loan, the Owner executed a mortgage on the Property in favor of Fay (the "Fay Mortgage"). A true and correct copy of the Fay Mortgage is attached hereto as Exhibit "C".

26. As Fay required as a condition of its approval of the Refinance Loan that it obtain a Mortgage insured in first lien position on the Property, WFG Title issued a loan policy of title insurance to Fay insuring the Fay Mortgage as a first lien on the Property (the "Loan Policy"), subject to the terms and conditions of the Loan Policy. A true and correct copy of the Loan Policy is attached hereto as Exhibit "D".

27. WFG Title issued the Loan Policy to Fay in reliance upon its belief that the proceeds from the Refinance Loan were being used to pay off the First Republic Mortgage.

**The First Republic Bank payoff funds are diverted to Defendant's account**

28. In reliance upon the Fraudulent Wire Instructions, WFG Escrow issued a wire authorization to Wells Fargo Bank, N.A. ("Wells Fargo") directing it to wire the sum of $565,094.59 (the "Payoff Monies") to Defendant's account at Huntington, with the notation that it involved a loan on 304 25th Avenue South in Seattle and that the wire was to pay off a mortgage loan to First Republic. A true and correct copy of the wire authorization is attached hereto as Exhibit "E".

29. Pursuant to the wire authorization, Wells Fargo wired the Payoff Monies to Defendant's account at Huntington . A true and correct copy of the outgoing wire detail is attached hereto as Exhibit "F".

30. Based on the information set forth in the wire, which information included the address of the Property and the loan number of the First Republic Mortgage loan, Defendant was aware, or should have been aware, that the wire of the Payoff Monies resulted from a real estate transaction involving real property in Seattle, Washington.

**The First Republic Mortgage is not paid off**

31. As a result of the diversion of the funds intended to pay off the First Republic Mortgage to Defendant's account, the First Republic Mortgage remains unpaid.

32. As a result of the diversion of the funds intended to pay off the First Republic Mortgage to Defendant's account, First Republic has refused to satisfy the First Republic Mortgage on the Property.

33. As a result of the failure to satisfy the First Republic Mortgage, the Fay Mortgage is in second lien position on the Property.

34. As a result of the fact that the Fay Mortgage is in second lien position on the Property, Fay has submitted a claim to WFG Title under the Loan Policy, exposing WFG Title to a risk of loss under the Loan Policy.

### Defendant receives other diverted monies

35. It is believed and therefor averred that certain proceeds from another real estate transaction were also diverted to Defendant's account at Huntington .

36. That wire, believed to be in the sum of $1,022,392.88, also included information that the amounts being wired into Defendant's account at Huntington were derived from a real estate transaction involving property in Anaheim California and that the proceeds were a loan payoff.

### Defendant wires the Payoff Monies from its account to the fraudster

37. On or about June 25, 2021, Defendant wired the sum of $1,297,000 from its account at Huntington to an account at Banco Santander Mexicano, S.A. in Mexico City, Mexico.

38. On or about June 28, 2021, Defendant wired the sum of $241,000 from its account at Huntington to an account at TCF National Bank in Sioux Falls, South Dakota.

39. The wires out of Defendant's account referenced the fact that the monies were being wired in connection with the alleged settlement of a claim against Data Path, Inc. ("Data") for infringement of intellectual property rights.

40. Defendant made the transfers to purportedly settle an infringement claim against Data, despite knowing that the wires into Defendant's account derived from real

6

estate closings in Washington and in California, and that neither wire indicated that it was transmitted by Data or that they involved Data in any way.

41. In response to inquiries from prior counsel for Plaintiffs regarding the account and the disposition of the funds in the account, Defendant represented that only approximately $48,000 remained in the account from the fraudulent diverted proceeds.

42. Defendant further represented that it would not disburse any additional monies from the account and that it would hold those funds in the account.

### Owner files suit against WFG Escrow

43. The Owner contends that it is continuing to make payments on both the First Republic Mortgage and the Fay Mortgage as a result of the diversion of the Payoff Monies to Defendant's account.

44. In addition, Owner has filed an action against WFG Escrow in the Superior Court for the State of Washington, King County, No. 22-2-05400-0 SEA, in which it seeks to compel WFG Escrow to pay off the First Republic Mortgage and to reimburse Owner for its claimed losses.

45. WFG Escrow denies any liability to the Owner in the Washington litigation.

### Count I – Declaration of Constructive Trust

46. The allegations of paragraphs 1-45 inclusive are incorporated herein by reference.

47. Defendant obtained the Payoff Monies.

48. Defendant obtained the Payoff Monies under circumstances in which Defendant knew or should have known that the monies were wired to Defendant's account in connection with the payoff of a loan from a Seattle Washington real estate transaction.

49. Defendant had no reasonable basis to conclude that the transmission of the Payoff Monies to Defendant's account were related in any way to an alleged infringement claim.

50. Defendant's transfer of any of the Payoff Monies out of the account to the banks referred to in paragraphs 34 and 35 hereof was wrongful.

51. A constructive trust is warranted over any remaining proceeds in Defendant's account at Huntington .

52. A constructive trust is warranted over any other proceeds that can be traced to the Payoff Monies wired into Defendant's account.

53. Defendant should be declared a constructive trustee of the monies remaining in the account and over any other proceeds that can be traced to the Payoff Monies wired into Defendant's account.

WHEREFORE, Plaintiffs respectfully request that the Court:

    a. impose a constructive trust on the Payoff Monies, as well as any and all monies or other assets which can be traced to the Payoff Monies;

    b. direct Defendant to maintain possession of any and all such proceeds in Defendant's account pending further Order of this Court; and

    c. granting Plaintiff such other relief as may be just and proper.

## Count II – Money Had and Received

54. The allegations of paragraphs 1-53 inclusive are incorporated herein by reference.

55. The Payoff Monies were received Defendant without any consideration given by Defendant.

56. The Payoff Monies were received by Defendant under circumstances by which it would improper and unjust for Defendant to retain the monies.

57. The monies had and received by Defendant were received for the use of Plaintiffs.

58. Plaintiffs are entitled to a return of the monies received by Defendant.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant in an amount in excess of $500,000, plus interest and costs.

### Count III - Negligence

59. The allegations of paragraphs 1-58 inclusive are incorporated herein by reference.

60. Defendant acquired the Payoff Monies with full knowledge that they were derived from a real estate transaction in Seattle Washington, and that they related to the payoff of First Republic Bank, not to the settlement of some alleged infringement action.

61. If Defendant did not have actual knowledge that the Payoff Monies were derived from a real estate transaction in Seattle Washington, and that they related to the payoff of First Republic Bank as opposed to the settlement of some alleged infringement action, then Defendant should have known these facts.

62. Upon receipt of the funds, Defendant had a duty to Plaintiffs to either (a) make inquiry as to the purpose for which the funds were wired to Defendant's account and/or (b) insure that the funds were not distributed for any purpose other than the purpose for which they were transmitted to Defendant, i.e., the payoff of the First Republic Mortgage.

63. Defendant breached its duty by transmitting the funds as set forth in paragraphs 34 and 35 of this Complaint.

64. As a direct result of Defendant's breach of its duty, WFG Escrow has been exposed to risk of loss in the Washington action referred to above and under the Loan Policy.

65. As a direct result of Defendant's breach of its duty, WFG Title has been exposed to risk of loss under the Loan Policy.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant in an amount in excess of $500,000, plus interest and costs.

    FOX ROTHSCHILD LLP

    */s/ John C. Hansberry*
    John C. Hansberry, Esquire
    Ohio Id. No. 0065673

    FOX ROTHSCHILD LLP
    BNY MELLON CENTER
    500 Grant Street, Suite 2500
    Pittsburgh, PA  15219
    Telephone:   412-394-5522
    Facsimile:  412-391-6984

    Attorneys for Plaintiffs, WFG National Title
    Company of Washington, LLC and WFG
    National Title Insurance Company

Date:  August 4, 2022